This is the matter of the United States of America v. Denmark. Mr. Sorensen. Thank you, Your Honor. May it please the Court, my name is Quinn Sorensen. I do represent the defendant appellant, Foskay Denmark. I'd like to reserve three minutes for rebuttal, if I may. Granted. Thank you very much, Your Honor. Two findings are necessary to support an enhancement under Section 2D1.1b1 of the drug trafficking crime. And those two findings are, one, the firearm must be found to have been present at the drug trafficking activity, and two, it must not be clearly improbable. Now, let me stop you there. Present at the drug trafficking activity, where does that language appear? Well, if you look in the guideline itself, of course, if you go down to the application note, application note 11, it does refer to present. And then later on, it says that present at the scene of a crime, it's why they apply the enhancement. And this court has traditionally, and followed other courts as well, in assessing presence or the first burden of production by the government, possession at the scene of the crime. But we've looked at temporal and spatial relation, and it says that at present, there is both. Exactly. Okay. Go ahead. So it can be viewed as not a high bar in certain regards, but the firearm has to be somewhere at location or associated with a crime. This court has used in connection with various other formulations, and now the polyton and other cases. But if you get to that fundamental point is that the government bears the burden initially of showing that there was a firearm present during the offense in some form or fashion, that temporal or spatial relation must be satisfied. And here, we don't have a finding of presence. We don't have a finding of lack, clear, and probability by the district court. We have neither of those. And those are two prerequisites that this court has recognized that the government bears the burden of proving the first, the defense the second. This report has to resolve those two findings and make a finding. And that's what it said in the polyton and other cases. You're not arguing, are you, Mr. Sorensen, that there had to be demonstrated that there were actually drugs found in Mr. Denmark's residence, are you? Well, no, I am not correct, Your Honor. And this court has, in fact, recognized, along with other courts, that a finding that drug paraphernalia was in the area, drug money, something like that, will suffice so long as it is connected to the offense of conviction. And that's the fundamental... And wasn't there drug paraphernalia found in his home? There was drug paraphernalia. Packaging materials that met... I should make clear, there was packaging material that could be used in drug activities of some sort, but it wasn't linked to the methamphetamine delivery that is the offense of conviction. And that's the fundamental problem we have here. There's nothing... Wasn't it the same type of packaging material found in the drugs that were the subject of one of the transactions here? That was not established, Your Honor. There was photographs shown of the drug packaging material that was taken in Pennsylvania from the delivered packages, and that was shown to be... Looks like plastic wrap of some sort. There was plastic wrap also at the house that was photographed, but they were not the same. They were not demonstrated to be the same type of plastic wrap. The trooper who testified did not say that they were exactly the same. He just looked, they said, looked the same. And there was no analysis done linking them. And again, what we have to have in terms of showing possession or location, and here it would be located at the residence of Mr. Denmark, we have to show some link between the methamphetamine and between the firearms that were later found. And it has to be on the date of the offense of conviction, somewhere around that time. Go ahead, please. No, I think we're making the same point. You're saying it has to be on the date of the offense of the conviction. Why would that be? Well, it has to be in association with the offense of conviction. It doesn't necessarily have to be on the same date, but there has to be that spatial temporal relationship between the firearms and the argument. It's a very interesting argument. You're saying your client had two businesses. He was a methamphetamine business and a marijuana business. And to be a bit facetious that his business plan only called for him using the firearms in relation to his marijuana business. His business plan for his meth did not include the use of firearms. That's a bit facetious, but that's kind of what you're arguing. Well, I wouldn't admit, and I wouldn't say that there was any proof that the firearms were used for any of the businesses in this case. The question here is not whether they were used at all. Well, if I read the record correctly, Mr. Sorenson, his character witness may not have been entirely helpful on that point because the suggestion of the need for the artillery and the armor here would have been very useful in the marijuana business. I think that's what the character witness suggested. I can indeed suggest that as a kind of hypothetical matter, I would say that that's not evidence as to what Mr. Denmark was actually doing in this case. And again, to get back to the fundamental issue here, we have a methamphetamine. We need to have that link at some point between it and the firearms. And what we have here is maybe some drug packaging that might be used in a business of drugs for some form or fashion, but no proof that it's methamphetamine. And perhaps you yourself, you yourself, Mr. Sorenson indicated that the packaging material did look like the packaging material that was found with the drug in the transaction here. You also indicated there were photos and those photos were available to Judge Rambo, were they not? Oh yes, most definitely, Your Honor. And just to be clear, the testimony was from the trooper that they looked somewhat similar. So that's what I was quoting from. And to get to the point, again, one other problem with this is, again, where we have the discovery of the firearms in the residence is not in December of 2018. December of 2018 is when this offense occurred. The firearms were not discovered until January, mid-January of 2019, a full month later. And there was no evidence, no proof set forward by the prosecution tracing the firearms back to show that they were actually in the residence at the time when the offense was committed. That is the offense of distribution of methamphetamine. So I think you've got a serious problem of proof there, that there was a failure to link that back. Weren't sales or calls relating to sales from the residence? Oh, I'm sorry, Your Honor. Weren't sales of drugs or calls relating to sales, did they not occur at the residence? I think there's two points there, Your Honor. And I understand the reference you're talking about. It's the one that there was a cooperating witness or buyer that the trooper actually witnessed the FaceTime video of it in which he called Mr. Denmark, Mr. Denmark to provide the drugs. Now, there was some dispute over whether that was actually a call taken from Mr. Denmark's house. But that's evidence that's presented to a jury. So it looks like the residence was in some way related to drug activity. And the jury could conclude that the possible drug paraphernalia was indeed drug paraphernalia. Then in connection with this very broad enhancement, the question is, did he possess, he, Denmark, possess weapons? And they found weapons on the second floor, a fair number of even though the paraphernalia was found in the first floor. And you seem to be arguing that the spatial and temporal proximity is a must. But if I read Neapolitan, it's, you've got to show that the guns were possessed, but you don't necessarily, you can show, you can make a showing that the possession was, or that the guns were somehow related to drug activity, not that by spatial and temporal proximity. So it's a permissive for that. And I don't think it's a must. Well, I'd make two points. One is that, again, the firearms here were discovered a month later. There was nothing to show that they were actually present at the time of the events. But two, and maybe a more fundamental point, and this might get to the crux of the question really, is clear improbability. That's something that Judge Rambo didn't address at the district court level. But it's something here that I clearly think requires or prohibits application of the enhancement. And that is because- Do you dispute that Denmark possessed the firearms? Oh, yeah. Well, no, no. Possessed the firearms? No. Do you dispute that he had access to the safe where the handguns were found? There's no evidence that he did not. And did defense counsel ever actually argue at sentencing that the connection was clearly improbable? I think that was the crux of her argument. In fact, that's what she was arguing about, why these were not connected to the events and why- You might want to take a look at that because it seems like defense counsel was focused on the first step of the analysis, whether the government carried its burden of showing that the enhancement applies, rather than the second step where you must show that the connection was clearly improbable. That was the burden on the defendant. The burden is on the defendant at that point in time, but there was an objection, a clear objection raised to the entire enhancement. And as this court recognized in Napolitano, while it's the burden, it's certainly on the defense. There is a requirement for the district court to address this issue because the enhancement applies only unless it's not clearly improbable that the firearms will be used. And here, it was almost an impossibility that they would be used because of the nature of the offense. And that was delivery of methamphetamines, of controlled substances through the mail. This was an entirely remote operation, at least with respect to the buyer in this case, and Mr. Denmark. Mr. Denmark contacted the source before the buyer by phone, spoke to him only by phone, never interacted with him personally, and mailed the drugs from a post office location to Pennsylvania. The firearms at the house, even assuming they were connected in some form or fashion to satisfy the first prompt, they were not able to be used whatsoever at all during the offense itself because Mr. Denmark had no association with any individual to do it. And while he was at the post office committing the offense, of course, at that point in time, the firearms remained at the residence, presumably inaccessible to him entirely. And that's getting to the crux of the clearly improbable inquiry, as this court has set forth in Napolitano and other cases. What do we do with the nature of the firearms and firearm-like items found here? Was it an assault rifle, body armor? Doesn't that inform the inquiry as to whether or not items were possessed in relation, in connection with the drug business? I mean, who walks around with body armor unless they're a law enforcement official or a drug dealer? Well, most definitely. There was a four-factor test that this court has repeated on a number of occasions in the sense of clear probability. And the type of drugs that are present at the location is certainly one of those. And also, whether there is ammunition located, whether it's loaded, whether it's nearby, but the other two factors, and they're equally important. And they have been described as more crucially important, and I would say they are indeed more crucially important. Whether the firearm was discovered near drugs, and second, whether the firearm was accessible to the defendant. Because the very meaning of clear improbability is whether the defendant actually used the firearm in any form or fashion during the events. And he simply could not do it here because the buyer was in Pennsylvania. The only people he was answering were the people who were in Pennsylvania. So, I don't really answer my question. My question is, and I'm referring obviously to one of the Dostoevsky factors, the kind of item we're referring to here, why else would he have it in terms of the defense argument, the defense burden of showing a clear improbability that the items were possessed in connection with the drug trafficking? Why else would you have body armor in your apartment? Well, that I do not know, but the question here is not whether he had these weapons for some improper purpose generally or something of that nature, or whether he was operating into some other conspiracy or drug distribution scheme. It's whether they were linked to this particular offense, whether it's clearly improbable that this particular offense was going to be committed with the use of firearms. And again, the manner in which this particular offense was committed, by mail, by phone, precludes the possibility even that he would be able to use a firearm Does it have to be possessed in order to commit the offense, which is the way you're articulating it, or is it simply having the items in connection with the offense? Well, I would say that's more akin to the first prong of the analysis, determining whether it's present. When you get to the second inquiry, you have already determined, you've already accepted that they were in connection with the offense. That is, they were sufficiently related that they've met the prosecution's burden. And then the burden tripped under this court's precedent, switches over to the defense to have the opportunity to say, yes, there is a connection, but this could not have happened. These firearms could not have been used reasonably under the circumstance of this offense. Clearly, clearly. Could not have been. Yeah, clearly. And I think it's clear in this case, and this is a fairly unique case because... Judge McKee and Judge Ambrose, do you have further questions? We have gone beyond Mr. Sorensen's time. We'll have you back for rebuttal, Mr. Sorensen. Thank you, Your Honors. Thank you. Mr. Bloom. May it please the Court, I represent the appellee, United States of America. In this particular case, the United States met its burden beyond a preponderance of the evidence that the defendant indeed possessed a dangerous weapon. The first part of that, the possession itself can be shown with temporal and spatial relationship. Here we have both a temporal relationship. It's within only one month. There's no evidence that he stopped his drug trafficking. In fact, we have just the opposite. We have the drug trafficking materials in the home at the time of the search warrant indicating that he did not stop. And we have no evidence that it was a recent acquiring the firearms or a recent purchase of the firearms. And I think there's other evidence that suggests that as well, such as the number of firearms, where they're stored, the multiple locations, the 909 rounds of ammunition. Getting to the second portion, the spatial relationship. Can I just back up on the first in terms of what is possession? You argue in your brief that we review the district court's decision for clear error. But is that the issue? Isn't the issue the first issue, I guess, whether the district court correctly interpreted the guidelines as to what is possession? Well, I think there's two parts to that, Your Honor. I think first you get to the clear error is a factual that the court made a determination that there was a basis. And there's certainly a deference to the district court. The facts in this case regarding the possession, the application, certainly of the guidelines would be a question that would be under a different standard. That would be plenary. Yeah. What is possession under the guidelines would seem to be a matter of law, whether it was clearly improbable. That would seem to be a factual determination, as noted by Napolitano. But that isn't. Do you agree with that? I do not, Your Honor, respectfully. Wait, interpretation of the guidelines is not a legal matter. No, I believe the interpretation of the guidelines, the application of the guidelines is a plenary and that is a legal matter. Okay. And the clearly improbable is a factual matter. I believe that's all that is a factual matter. But I believe that possession is a factual matter as well. The court has to make a determination whether or not there's possession. And that is I got you. I got you. But what I'm saying is what is possession when you interpret it? In other words, what is the what is the parameters of possession in order then to make your factual determination? What are the parameters of possession would seem to be a legal matter, correct? What would determine that? Yes, I would have to agree with. Enough on that. Let's let's get down to the. So, Your Honor, the the evidence would establish in this case, a prima facie case sufficient to establish the fact that the defendant possessed these firearms. The burden then shifted to the defendant at that point to show that there was a clear improbability. All of the factors that have been promulgated by this court established, in fact, that there's there's no clear probability. Looking first to the the type of weapons that we have here, we have an assault rifle, a shotgun. We have two pistols. He claims he never shot one of them. They're not hunting rifles. They're they're items that could be readily used as a tool of the trade for drug trafficking. Next, looking at whether or not they're loaded, there were seven loaded AR, seven loaded magazines, six were for the AR-15 and one nine millimeter loaded magazine. And that was actually in the firearm. There was not a round chambered, but there were seven loaded magazines. We have nine hundred and nine bullets of those nine hundred and nine bullets. There were 400 blue tipped, unarmored, flammable rounds. They were stored near the paraphernalia. Elaborate upon that. You said unarmored, flammable. What does that mean? So these were essentially an incendiary round, Your Honor. They're they're a blue tip round. It's not armor piercing. We actually corrected the record in that regard. It's a bullet that would be fired at a flammable object such if you were to shoot an item like a gas can, it would blow that gas can up as opposed to literally making a hole in the gas can. What is the purpose? I never heard of it. It's called it's called sport. I guess you want to barbecue the damn deer and kill it all at the same time. But but, Your Honor, and and one of the things that that that defense counsel does is that they try to make this into some kind of marijuana case and that they there's an admission that the defendant's a marijuana dealer. There's just simply no evidence on the record at all to establish that. We know for a fact that he's a methamphetamine dealer. We know for a fact that the methamphetamine that was received in Pennsylvania was consistent with the drug paraphernalia and packaging at the house. We even have the wand. The testimony during the proceeding was that a wand was used essentially to wrap around over and over and over around the drug packaging. So that again, weighs in favor. And then we have the accessibility. The two firearms were actually in the safe, accessible to the defendant. The long rifles were actually under the bed in the bedroom. Also accessible to the defendant. And I think this court clearly established that you don't have to have it in the same room. There's indicia here of drug trafficking activity and and drug trafficking activity up until the date of the search warrant, which would have been approximately a month later. Again, the defendant tries to narrow and say, well, the defendant didn't ship the items. He only he literally went from the post office and really mailed them that the crime didn't occur at the apartment. I think the crime and the evidence establishes here that, in fact, the negotiations about the drug actually occurred at the apartment. And that's part of the crime itself. Let me explore with you what would be the outer limits of this broad enhancement. If the. Drug paraphernalia. And some transactions relating to the drugs occur in a residence on the east side of town. And it's later determined that the defendant has another place that he uses as an abode on west side of town several miles away. And the west side of town abode contains weapons. Does the enhancement apply? It certainly could apply, your honor. And if I would direct the court to look at Drozdowski because. But how so? Well, if it's I think that the first part of that would have to be, does it is it in connection with the offense? So if the individual storing drugs and the guns are near the drugs, certainly that would establish and that would make the connection. Again, it's a tools of a trade, but I'm looking at note 11A and it says, quote, the enhancement should be applied if the weapon was present. Unless it is clearly improbable that the weapon was connected with the offense. So if I'm in my example, the weapon is not present where the drugs or drug paraphernalia are on the east side of town, but the weapon is present at a boat on the west side of town. You're telling me. That it's present, right? Once I'm indicating that it could be possessed, which is actually what I'm asking you to stick to the note, the note says, quote, the enhancement should be applied if the weapon was present. And I guess what I'm asking you is present where at some point we have to stop. At some point, it becomes it's too far. What is the point? I believe that it's it's present in connection with the offense. I don't believe that that's limited to the abode. And in fact, Drozdowski says otherwise, that it can actually be in another residence if it's present in connection with the offense. The guideline actually indicates that if it's possessed, the actual present part is a is a application note that's instructive to the court. Well, because it is possessed. I mean, if he possessed the gun in California, you're telling me somehow that's then you get the enhancement, even though the crime occurred in Pennsylvania. Is that what you're telling me? Absolutely. One hundred percent, your honor. And that's because there's other factors. He's negotiating a drug deal. He's purchasing his drugs from someone or obtaining his drugs from someone. The methamphetamine. He also has to protect not only the drugs that he's obtaining before he sends it here, but also the drug proceeds. And that's exactly what. OK, so tell me how that fits within the four factors of the polyton. Well, I think the four factors. So we look first at the type of weapon, the type of weapon here we have. OK, my example now is he has guns in California and the drug paraphernalia and the drugs are in Pennsylvania. So tell me how that fits within the four factors in the polyton. Well, I think it fits within just just to excuse me, just to clarify, are we are we in the hypothetical now? Are we still in the hypothetical? Now, the hypothetical is the drugs are in Pennsylvania. The guns are in California. Well, the crime your honor committed, he mailed the drugs. He had the drugs, the methamphetamine. I don't think that's in dispute at all. That's a fact. He mailed those drugs from California to Pennsylvania. So I so I think that that's I think the weapon was connected with the drug offense. The type of gun involved, whether the gun was loaded, whether the gun was stored near the drugs or drug paraphernalia were now 3000 miles away and whether the gun was accessible. Obviously not. Well, I believe that I believe otherwise, your honor. I think that the gun in California is accessible with respect to somebody that comes into the Pennsylvania residence. Well, I think it relates to the crime of him being a methamphetamine dealer. I don't believe I think it's too narrowing to say it only relates to this particular drug transaction for the drugs that are mailed out there because we have to. Again, he has the methamphetamine. He obtains the methamphetamine in California and from there he needs to protect it. Related and connected with the offense. And again, let's say he shipped from Nevada. I mean, I mean, at some point it gets ridiculous, doesn't it? And you've got it. You've got to concede that if you're going to go to the nth degree, then you're inviting us to somehow cut it off. Well, is it or is the court talk about the facts or the hypothetical? I guess I'm talking about the hypothetical. I mean, the facts here may support you. I'm just trying to I'm trying to give you the actual the compliment of becoming the judge here and telling us when this works and when it doesn't work for future cases. Well, I think if in your hypothetical, if he had been mailed and he's not a drug dealer of any other transaction and it's mailed from Nevada, perhaps that hypothetical, perhaps that wouldn't apply. But looking at the facts in this case, what we know we mail, he mailed it from his home. He had a minimum negotiated this drug transaction at his home. At a minimum, he has drug packaging material that is consistent with the methamphetamine that was sent to Pennsylvania. And we have the fact that he's prohibited from possessing firearms. None of the firearms were lawfully registered to him. The types of firearms, the accessibility of those firearms, the fact that they're stored near paraphernalia, the fact that they're loaded, such as the pistol loaded with a magazine, the seven loaded magazines for the AR-15, the body armor, all those are indicative that it's connected to the offense. And all four of those factors that's been presented by the court in Napolitan, all four weigh in favor of the United States in terms that of establishing and the defendant failing to establish a clear improbability that they're related to the offense. Certainly, the judge analyzed this. She actually took a 10-minute break to analyze the facts. She was aware of the standards. She ruled on the entire argument. And I think inherent and implicit in that determination was her finding that there was no showing of a clear improbability. Under your reading of the enhancement, would it apply every time someone who happens to deal drugs possesses a weapon for self-defense? I don't believe that's correct. No, I would not argue that. Okay. And I should clarify, if it's self-defense as it relates to the drugs, certainly we suggest it would be applied. But if it's something else, we would not be arguing for a blanket interpretation. Gotcha. Assuming the self-defense was unrelated to the drugs. We got it. Legitimate self-defense, yeah. Do you have anything further, Mr. Blum? I do not. I would just indicate, I think the evidence here is overwhelming that the application of 2D1.1B1 was appropriate in this particular case. The evidence establishes that the defendant possessed the firearm. To show that, we established a temporal and spatial relationship. And there's no rebuttal of that prima facie showing. Judge McKee, any further questions? I have nothing further, thanks. Judge Ambrose. No, I've already indicated I have nothing. All right, thank you. Mr. Jordan, you have rebuttal. Thanks so much, Your Honors. I think this case does implicate legal issues subject to de novo review, both with respect to the meaning of possession in this context and the standard under clear improbability. And also factual issues with respect to both. But to start on possession, that was quite an extraordinary presentation of my colleague. And it didn't sound, as Judge Amber pointed out, like there was any limitation recognized on the meaning of possession in this context. And there must be, because in the application it explains quite clearly that possession requires that the firearm be present. And there must be something that it must be present at. And the only reasonable way to read that and to read possession in this context is that it has to be temporarily, spatially conjoined with the firearm in some sense on the same property nearby. And that need only be a prima facie case, but the prosecution must offer evidence, as Mr. Bloom actually acknowledged at one point, that the firearm was in connection with the offense. And that's consistent with the interpretation of possession in the 924C context, in which this court has said repeatedly, mere possession is not enough. There must be a connection with the offense. And here, as I indicated, you really don't have any such proof of the methamphetamine being linked with the firearm. It may work a little bit differently. If they show that there are guns possessed, then you have to show the burdens on the defendant to show it's clearly improbable that they were not possessed in connection with the drug offense or the accoutrement that exists with respect to the drugs. That's correct, Your Honor, in the sense that I would agree that once the prosecution has met its possession, for a burden to prove that they were present at the connection linked with the offense in some fashion, the defense has the burden then to prove clear improbability. And again, we get to a legal issue on that, or at least quasi-legal issue to my mind, that's relevant to this case in twofold meaning. And that is the meaning of clear improbability is not merely whether the firearms were loaded, whether they were tools of the trade, as Mr. Bloom said, but the fundamental question is whether they were accessible, accessible to be used during the offense of conviction. And that's the problem here. Not only do we not have a finding of the disreport, but we have no possibility of that finding in my mind, because as I mentioned, and Mr. Bloom never answered this question as far as I know, of how in this case the firearm could have been used. They were located at the house. Mr. Denmark committed the offense principally at the U.S. Postal Service. And the only time he was at the house with firearms, he was speaking on the phone to the buyer. So there was no possibility there that the issue was going to be met. And finally, I would also add, I think this was to Judge Smith's point earlier about whether clear and probability was actually mentioned. Actually, in the second addendum to the PSR, when the objection to this enhancement was raised, the probation officer recognized that that was a live issue and it was one that would be litigated. So I think we have a situation here in which we have two distinct legal issues, one with respect to possession, one with respect to clear and probability. I think in this case, the prosecution and the disreport below read this enhancement too broadly in both and the failure of the disreport to make any findings on either of those points, presence or clear and probability, renders the judgment of sentence improper in and of itself. And then when you get to the failing of the record to provide any proof that there was any possibility that the firearms would be used, I think the judgment of sentence must be reversed. And this case must be remanded for entry of a new sentence without that enhancement. All right. Thank you, Mr. Sorensen. Thank you, Mr. Bloom. We will take the case under advisement.